IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EILEEN FERGUSON,

                Petitioner,

            vs.                              Case No. 04-3413-JTM

ROGER WERHOLTZ,
Kansas Secretary of Corrections,

                Respondent.

MEMORANDUM AND ORDER

Petitioner Eileen Ferguson owned and operated a restaurant, Sampler's Restaurant, in rural Reno County, Kansas. After the restaurant was destroyed by fire on December 27, 1996, Ferguson was charged with setting the blaze. Ultimately, she was convicted in Kansas court of the crime of arson. Ferguson unsuccessfully appealed from her conviction, and later unsuccessfully collaterally attacked her conviction in the Kansas courts pursuant to K.S.A. § 60-1507. She has now brought the present federal habeas corpus action alleging deprivations of her constitutional rights. This court has reviewed the pleadings and records of the state proceedings, and finds that the petitioner's application for a writ of habeas corpus should be denied.

Petitioner Eileen Ferguson was charged with arson, in violation of K.S.A. § 21-3718, Case No. 97-CR-207, in the District Court for the 27th Judicial District of Kansas in Hutchinson, Reno County, Kansas. Ferguson was defended at trial by attorney Francis E. Meisenheimer. A jury returned a guilty verdict on May 1, 1998. Ferguson's motion for judgment of acquittal was denied

on May 29, 1998.  Ferguson was sentenced on July 17, 1998.  She served 32 months in prison followed by a 36-month term of post-release supervision in the custody of the Secretary of Corrections.

The Kansas Court of Appeals affirmed the conviction in an unpublished decision on March 17, 2000 (Appeal No. 81677).  The Kansas Supreme Court denied Ferguson's petition for review on June 13, 2000.

Ferguson filed a motion to vacate the sentence pursuant to K.S.A. 60-1507 in Reno County Kansas District Court (Case No. 00-C-234), arguing that her right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution was violated due to the nature of her trial attorney's conduct.  Specifically, she alleged that Meisenheimer failed to move for dismissal of the defective information filed in the case, that he failed to present expert testimony from an arson investigator, and failed to conduct an investigation into the financial condition of Ferguson's store, the site of the alleged arson.

An evidentiary hearing was conducted on Ferguson's claims.  The motion was denied by the state district court on February 26, 2001.  The Kansas Court of Appeals reversed this decision on January 17, 2003 (Appeal No. 86736), remanding the case with directions to vacate Ferguson's conviction. However, the Kansas Supreme Court granted the State's petition for review and on October 17, 2003, reversed the court of appeals and affirmed the decision of the district court. Ferguson moved to modify the order, and the supreme court issued a modified opinion on November 12, 2003.

At the hearing on Ferguson's K.S.A. 60-1507 motion, she presented the testimony of Jack Focht, an attorney with over 40 years of experience in Kansas practice.  Focht testified that

Ferguson's trial counsel was unreasonably deficient in failing to challenge the validity of the charging documents, in failing to present the testimony of an arson expert, and in failing to present the testimony of an expert accountant.

Ferguson also presented the testimony of accountant John Evans, who had testified at the trial that the restaurant was losing money.  Evans testified at the hearing that, had he been asked to conduct a full review of the general ledger of the business, he could have testified that it was "making a small profit, slight." (R. Dec. 20, 2000 Hearing Tr. at 156).  However, Evans also agreed that the general ledger did not include a $7000 loan from Ferguson's sister.  (Id. at 158).

Ferguson also supplied the testimony of another accountant, David Mitchell.  Mitchell testified that the restaurant made a net income between September, 1995, and September, 1996, of $23,220.28. (Id. at 35-36.) However, Mitchell conceded he did not know how much money the restaurant was making in the last months of its existence, or its net worth at the time of the fire. (Id. at 42.)  On cross-examination, he stated he was not aware that the restaurant had recently bounced checks for employee paychecks and utility bills.

In addition, the petitioner offered the testimony of fire investigation expert Dr. John De Haan, who testified that he believed petitioner's trial counsel's performance fell below what he considered an objective standard of reasonableness because trial counsel failed to call an expert witness on arson investigations.

Ferguson's trial counsel testified at the district court K.S.A. 60-1507 hearing, stating that he originally planned to raise an attack on the charging documents as defective.  However,  he later came to believe that any such challenge would not obtain a dismissal.  He further testified he believed the absence of some elements of the crime from the charging documents "did not prejudice

my case in any way." (Id. at 183).  Even if there been a successful arrest of judgment, counsel

testified that it would not have altered the ultimate outcome of the case upon retrial, since he did not

believe "the result of that trial would have been any different the second time." (Id.)

> Petitioner's counsel testified that he did not call a financial expert to testify because
> it was not good trial strategy to, to act as if there were no financial problems because
> it appeared to me based on the evidence that there were.  On the other hand, I
> believed that, that those financial problems were being overplayed by the State, and
> I thought that a jury would see they were being over-played by the State, and so that
> seemed to me to be an appropriate way to handle that matter.

(Id. at 182).  He testified that he did consult with an arson expert, Don Emerson.  Emerson was

employed to review the material involved in the case, including the arson investigation reports of

the State of Kansas and the restaurant's insurer, and provide an opinion which might assist in the

defense.  (Id. at 172).  Counsel believed that the resulting information supplied by Emerson was of

marginal utility.  (Id. at 174).

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the

petitioner is entitled to federal habeas relief only if she can establish that the state court decision was

either "contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States," or represents an "unreasonable

determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1), (2). *See Hooks*

*v. Ward*, 184 F.3d 1206, 1213 (10th Cir. 1999).  A state court decision is contrary to clearly

established precedent if the state court either "applies a rule that contradicts the governing law set

forth in [United States Supreme Court] cases" or "confronts a set of facts that are materially

indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from

[Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). A state court

decision is an unreasonable application of clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08. This court will presume that the fact findings of these state courts are correct, in the absence of clear and convincing evidence of error. *Miller-El v. Cockrell*, 537 U.S. 322, 341, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

The first argument advanced by the petitioner is that she received ineffective assistance of counsel when her trial attorney did not move to arrest judgment based upon the failure of the state indictment to allege that the arson was done knowingly and by means of fire or explosive.

The court finds that petitioner has failed to demonstrate any basis for the relief sought. To demonstrate ineffective assistance of counsel, a petitioner must show both that her counsel's performance fell below an objective standard of reasonableness, and that the deficient performance prejudiced her case by creating a different result than that which would have occurred in the absence of counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The court's "scrutiny of counsel's performance must be highly deferential, undertaken with awareness of "the distorting effects of hindsight," and issued in conjunction with the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

In *State v. Hall*, 246 Kan. 728, 793 P.2d 737 (1990), the Kansas Supreme Court applied a new rule of law to govern challenges to the sufficiency of charging documents. As the court noted in its ruling rejecting petitioner's K.S.A. 60-1507 claim

> the primary effect of the post-*Hall* liberal interpretation rule was to impose a
> procedural rule to prevent automatic reversal of convictions on appeal on due process
> grounds where defense counsel failed to challenge the sufficiency of a defective

5

information at the district court level.  The court's rationale for crafting the new rule in *Hall* appears to be to set up a mechanism whereby convicted defendants were encouraged to bring claims of defects in charging documents to the attention of the trial court and to discourage such claims from being subject to review for the first time on appeal.

*Ferguson v. State*, 276 Kan. 428, 442, 78 P.3d 40, 50-51 (2003).  The court continued:

Logically, allowing Ferguson to profit from the application of the pre-*Hall* standard on collateral attack would undermine the rationale behind the rule and would instead discourage defendants from bringing timely claims of informational defects to the attention of the trial court, and result in numerous ineffective assistance of counsel claims subject to review for the first time on collateral attack.  This result could not have been anticipated by the *Hall* court.

276 Kan. at 442, 78 P.3d at 51.

Citing *Roach v. State*, 27 Kan.App.2d 561, 7 P.3d 319 (2000), the Kansas Supreme Court concluded that the pre-*Hall* analysis should not apply in collateral attack cases challenging jurisdiction based on defects in the charging documents, as long as the defendant was adequately informed she was charged with an offense under Kansas laws.

The liberal common-sense rule enunciated in *Hall* should extend not only to challenges to the sufficiency of the charging document, but also will apply for purposes of analyzing the prejudicial effect of trial counsel's failure to file a motion to vacate in a collateral attack based on ineffective assistance of counsel.  This necessitates overruling *Hall* in part.  The *Hall* opinion states:

"A motion for arrest of judgment is the proper procedure for a defendant who wishes to challenge the sufficiency of the information after trial because of either a claim that it did not charge a crime or that the court was without jurisdiction of the crime charged.  When such a motion is timely filed, the trial court in reviewing the motion, shall test its merit by utilizing the rationale of our pre-*Hall* cases." 246 Kan. at 764, 793 P.2d 737.

The pre-*Hall* standard will no longer apply in the case of a collateral attack such as we see in this case;  instead, the liberal common-sense rule enunciated in *Hall* will apply.

6

276 Kan. at 444-45, 78 P.3d at 52.

The court finds that the Kansas Supreme Court reasonably applied the standard set forth in *Strickland v. Washington* to conclude that petitioner did not suffer a constitutional deprivation. The petitioner has failed to demonstrate the existence of any prejudice. The petitioner has made no showing of any likely difference in the outcome of the state criminal prosecution. The plaintiff received a fair trial, and the deficiency in question — not explicitly reciting the elements of the offense in the charging statute — is not fundamental. As the Kansas Court of Appeals noted in its rejection of Ferguson's direct appeal, the deficiency did not affect the fundamental fairness of the trial:

> The information provided the name of the crime and the statute of the crime. The missing elements can be supplied by implication. Defendant received a thorough preliminary hearing setting out the allegations. There is no evidence to indicate that defendant was not fully aware of the charges against her and able to provide a defense, could not plead to the conviction in any subsequent prosecution, or that the information violated her rights.

*State v. Ferguson*, No. 81,677, Slip op. at 7 (Kan.Ct.App., March 17, 2000). Here, counsel credibly testified that the error in the charging document did not hamper his defense in any way, and he did not believe that any second trial using the same evidence would have produced a different result. The Kansas Supreme Court found that even assuming counsel was deficient in failing to raise the issue, Ferguson had failed to show any prejudice in the form of a likelihood of a different result. This court finds that this conclusion was not unreasonable.

Ferguson has failed to show that the outcome of the criminal prosecution would have been different. Had trial counsel attacked the sufficiency of the charging documents before trial, the State could have amended the relevant documents under K.S.A. § 22-3201. Even assuming that a post-

trial motion would have succeeded and would have resulted in the award of a new trial, there is no basis for assuming that the ultimate result, involving another trial based on the same witnesses and same evidence, would have ultimately resulted in a different outcome. The credible testimony of Ferguson's trial counsel is that the result would have been the same. The court finds that the petitioner has failed to show the existence of prejudice arising from the actions of her trial counsel, either by demonstrating a likely different result in the ultimate outcome of the case in the absence of the putative errors of counsel, or in some infirmity in the fundamental fairness of the underlying proceeding. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

Next, Ferguson contends that her trial counsel was constitutionally deficient in failing to obtain and introduce expert testimony on the source of the fire which destroyed the restaurant. The court finds the petitioner has failed to demonstrate that her trial counsel's performance was deficient. Both the Kansas District Court and the Kansas Supreme Court appropriately determined that trial counsel's decisions in this respect were tactical trial decisions which did not fall outside the bounds of what a reasonable attorney might undertake.

Here, attorney Meisenheimer forwarded reports of the State's experts and other relevant documents to expert Don Emerson for review. Meisenheimer believed that the resulting report by Emerson was of only marginal utility. Instead, he believed that a better approach at trial might be to highlight the differences between the various state and insurance investigations. This would be consistent with the general trial strategy of the defense, which was to argue that "we don't know what happened, but whatever happened, Miss Ferguson did not set fire to the restaurant." (R. Tr. Dec. 20, 2000, at 174). The state district court specifically noted counsel's 20 years of experience and found

that Meisenheimer was "an extraordinarily well-qualified attorney, with great expertise in criminal cases and jury trials."

This court has reviewed the record of the underlying trial and the evidence presented in connection with Ferguson's collateral attacks on her conviction.  The record fails to show that trial counsel was unreasonably deficient in failing to investigate the source of the fire.  The court accords a strong presumption of reasonableness to counsel's conduct of the trial's strategy, and there is nothing in the record to suggest that counsel was unreasonably deficient in this context.  Further, the petitioner has failed to demonstrate that further investigation or expert testimony would have led to a different result.

Finally, Ferguson argues that counsel was deficient in failing to demonstrate through the use of financial experts that the restaurant was not really losing money.  The court finds that the argument is without merit; the petitioner has failed to show that her trial counsel was unreasonably deficient.

Counsel, who has a degree in Finance and Business Administration, investigated the condition of Ferguson's business prior to the trial, obtaining copies of the business's records.  He spoke with Ferguson about the business.  As noted earlier, counsel ultimately concluded that there were ongoing financial problems at the restaurant, and that a trial strategy which claimed there were no financial problems could backfire.  The court finds that this was a reasonable tactical decision.

One witness testified that he could have testified, after a fuller review of the restaurant's records, that it was making a "slight" profit.   However, the same witness acknowledged on cross-examination that even this level of profitability would disappear if one were to account of a large loan to the restaurant made by the petitioner's sister.  Another witness would have testified that

the restaurant had profits of over $23,000 from September 1995 to September 1996. But the restaurant burned on December 27, 1996, and the witness could not testify how the restaurant was doing in its last few months of life. There was, on the other hand, evidence of bounced checks paid to employees and to workers. Meisenheimer believed that it was a better trial strategy to allow the State to present what appeared to be a weak showing on the question of motive.

The state district court and supreme court found that the trial counsel's decisions reflected a  legitimate trial strategy. There were clear indications that the restaurant was having financial difficulties. Trial counsel perceived, however, that the State's presentation on the issue appeared generally weak and ineffective. Further, the evidence now stressed by Ferguson simply fails to show that the restaurant was in a robust financial position at the time it burned down. Under the circumstances present, counsel's decision to avoid engaging in an elaborate review of the restaurant's financial position is precisely the sort of tactical trial decision which will not form the basis for a valid post-conviction challenge. The court finds the petitioner has failed to show that her trial counsel's performance was unreasonably deficient.

Finally, the court will also deny the motion for a separate evidentiary hearing. Evidence relating to Ferguson's current arguments was presented at a hearing before the Kansas Reno County District Court on December 20, 2000. Ferguson's trial counsel, Francis Meisenheimer, appeared and testified at that hearing. Ferguson's current counsel had a full and complete opportunity to examine Meisenheimer at that hearing, and ultimately passed the witness stating he had no further questions and that Meisenheimer could be excused. (R. Tr. Dec. 20, 2000 hearing, at 184-85).

Ferguson's current counsel suggests that Meisenheimer was deliberately untruthful in a portion of his testimony, but this challenge to counsel's credibility could and should have been

explored during the hearing before the Reno County District Court.  The court finds little of

substance to petitioner's argument.  The court finds Meisenheimer's testimony to be credible.

Meisenheimer specifically noted the difficulty of recalling the exact nature of his thinking as to trial

strategy in light of the passage of time since the trial.  However, the remainder of his testimony

establishes that his primary concern was that the report by Emerson was of very limited utility.

Meisenheimer also offered the additional observation that he felt  he could exploit differences in the

reports of the various fire investigators.  Ferguson's attacks on this testimony as a deliberate

falsehood is unfounded and unpersuasive speculation.

IT IS ACCORDINGLY ORDERED this 27th day of July, 2006, that the petitioner's Petition

for a Writ of Habeas Corpus (Dkt. No. 1) and Motion for Hearing (Dkt. No. 26) are hereby denied.


                                        s/ J. Thomas Marten
                                        J. THOMAS MARTEN, JUDGE